IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

BRANDY SIGMAN, *et al.*

        Plaintiffs,

v.

CSX CORPORATION, and
CSX TRANSPORTATION, INC.,

        Defendants.

Civil Action No. 3:15-cv-13328

Removed from the Circuit Court
of Wayne County, West Virginia

## NOTICE OF REMOVAL

Please take notice that defendants CSX Transportation, Inc. ("CSXT") and CSX Corporation ("CSX Corp.") hereby remove this action to federal court pursuant to 28 U.S.C. §§ 1441 and 1446 with full reservation of any and all defenses and objections.

In support of this notice, defendants respectfully submit as follows:

1. On August 31, 2015, plaintiff Brandy Sigman and 96 other individuals filed a Complaint ("Complaint") against CSXT in the Circuit Court of Wayne County, West Virginia, Case No. 15-C-165 (the "State Court Action").

2. Plaintiffs served the summons and complaint upon CSXT through service upon the West Virginia Secretary of State on or about September 4, 2015. Upon information and belief, plaintiffs also attempted service of the summons and Complaint upon CSX Corp. through service upon the West Virginia Secretary of State on or about September 4, 2015.

3.     Removal is timely pursuant to 28 U.S.C. § 1446(b), in that this Notice of Removal is being filed within thirty (30) days. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999).

4.     In accordance with 28 U.S.C. § 1446(a), copies of all pleadings and orders filed in the State Court Action are attached as Exhibit A. The Docket is attached hereto as Exhibit B.

5.     The Circuit Court of Wayne County, West Virginia is located within the district of the United States District Court for the Southern District of West Virginia.

6.     As shown below, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), in that plaintiffs and the defendants are of completely diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.     By removing the action to this Court, defendants do not admit any of the facts alleged in the complaint, or waive any defenses, objections, or motions available to them under state or federal law. Defendants expressly reserve the right to challenge the adequacy of the allegations in the complaint. *See Scaralto v. Ferrell*, 826 F. Supp. 2d 960, 967-68 (S.D. W. Va. 2011) ("'That the plaintiff may fail in its proof, and the judgment be less than the threshold (indeed, a good chance that the plaintiff will fail and the judgment will be zero) does not prevent removal.'" (quoting *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005)).

8.     In joining this Notice of Removal, CSX Corp. does not waive any defense it may have based on lack of general and specific personal jurisdiction, improper service of process, or improper venue. *See, e.g., In re Celotex Corp.*, 124 F.3d 619 (4th Cir. 1997) (dismissing defendant for lack of personal jurisdiction following removal); *Byard v. Verizon W. Virginia, Inc.*, No. 1:11CV132, 2012 WL 1085775, at *1 (N.D. W. Va. Mar. 30, 2012) (same); *Leach v. BB & T Corp.*, 232 F.R.D. 545, 551 (N.D. W. Va. 2005) (removing defendant does not waive

objection to mode of service of process by removing case to federal court). CSX Corp. is a holding company that does not operate a railroad or conduct any business in the state of West Virginia. Accordingly, CSX Corp. is not a proper party to this suit because it lacks the required contacts with the state necessary to exercise personal jurisdiction over it. *See, e.g., Green v. CSX Corp.*, Civ. A. No. 3:07CV-24-S, 2007 WL 2156551, at *3 (W.D. Ky. July 24, 2007).

9.  Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice is being served on plaintiffs, and filed with the court administrator for this Court and with the court in which the State Court Action was filed.

10. This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332. An action may be removed to federal court under Section 1332 where there is complete diversity of citizenship between the parties, and where the requisite amount in controversy exists. *See* 28 U.S.C. § 1332(a); *see also State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530-31 (1967).

**The Parties Are Completely Diverse**

11. According to the Complaint, all plaintiffs are residents of Fayette County, West Virginia. Compl. ¶ 1.

12. According to the Complaint, defendants CSX Corp. and CSX Transportation, Inc. are Virginia corporations with their principal places of business in the state of Florida. Compl. ¶¶ 2-3.

13. Thus, complete diversity of citizenship exists as between the parties. *See* 28 U.S.C. § 1332(a)(1).

**The Amount in Controversy Requirement Is Met**

14. With complete diversity of citizenship established, the remaining question for diversity jurisdiction purposes is whether the $75,000 amount in controversy requirement is

satisfied. A case may be removed so long as one named plaintiff satisfies the amount in controversy requirement, with a federal court sitting in diversity jurisdiction exercising supplemental jurisdiction over additional plaintiffs. 28 U.S.C. § 1367(a); *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005).

15. "The general federal rule has long been to decide what the amount in controversy is from the complaint itself." *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961). The Court engages in amount-in-controversy analysis with an eye toward reaching a reasonable reading of the value of the rights being litigated, as pled. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977).

16. The Complaint asserts that "each plaintiff stipulates that their individual damages do not exceed $75,000.00." Compl. ¶ 5. This statement does not bar removal, nor is it determinative of the amount in controversy. "To limit the amount in controversy for jurisdictional purposes, the stipulation must be a formal, truly binding, pre-removal stipulation signed by counsel and his client explicitly limiting recovery. . . . [and] the stipulation should be filed contemporaneously with the complaint, which also should contain the sum-certain prayer for relief." *Rabel v. Huntington Nat. Bank*, No. 2:14-CV-25818, 2015 WL 3540660, at *6 (S.D. W. Va. June 4, 2015) (internal citations and quotation marks omitted).

17. Plaintiffs' attempt to collectively "stipulate" in their Complaint bears none of the hallmarks of a binding stipulation. It lacks the required indicia of formality, including plaintiffs' individual, notarized signatures. Furthermore, it does not limit the entirety of the relief sought in the Complaint, addressing only "individual damages," Compl. ¶ 5. The Complaint notably seeks punitive damages in addition to compensatory relief. *See id.* ¶¶ 28-29. It also seeks medical monitoring recovery. *Id.* ¶¶ 26-27. Furthermore, the Complaint contains no sum-certain prayer

for relief. *See, e.g., Hamilton, Burgess, Young & Pollard, PLLC v. Markel Am. Ins. Co.*, No. CIV.A.1:05 0769, 2006 WL 218200, at *2 (S.D. W. Va. Jan. 25, 2006) (requiring a formal stipulation signed and notarized by each individual plaintiff stating that "'in no event shall their damages arising from the above-captioned civil action exceed $74,000.00'" in order to prevent removal).

18. Where, as here, the Complaint does not specify an amount of damages sought, the removing defendant's burden is to show that "it is more likely than not that the amount in controversy exceeds the jurisdictional amount." *Landmark Corp. v. Apogee Coal Co.*, 945 F. Supp. 932, 935 (S.D. W. Va. 1996). Defendants need not prove this to a legal certainty; defendants' burden, instead, is to show that it is more likely than not that the judgment that would be entered if the plaintiff prevailed on the merits of their asserted claims totals at least $75,000. *See Rabel*, 2015 WL 3540660, at *4; *Ashworth v. Albers Med., Inc.*, 395 F. Supp. 2d 395, 413 (S.D. W. Va. 2005). In performing this analysis, the Court considers not only what the plaintiff may be legally entitled to, but what the plaintiff has claimed he or she is entitled to. *See Scaralto*, 826 F. Supp. 2d at 967 ("The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties.").

19. "Lacking an expressed statement of the amount claimed, a court looks to the totality of the circumstances, including the complaint, the type and extent of the plaintiff's injuries, the amounts awarded in similar cases, and losses incurred to date of removal." *Scaralto*, 826 F. Supp. 2d at 968.

20. Plaintiffs assert that CSXT is liable to them under West Virginia common law causes of action for harm allegedly caused by the February 16, 2015 derailment of a train in or near Mount Carbon, West Virginia, and the resulting oil spill and fire. Plaintiffs allege "damages

from interruption of normal personal pursuits and business activities and opportunities, which include purchase of water, lost income, and evacuation" and "economic loss along with loss of use, annoyance, and inconvenience" as a result of the train derailment and the subsequent interruption in water service for some communities. Compl. ¶¶ 7, 9-10. Plaintiffs seek monetary damages for physical injury, emotional distress, property damage, property sampling and chemical clean-up costs; diminished property value, annoyance, inconvenience, lost wages, loss of earning capacity; medical monitoring costs; and other relief. *Id.* ¶ 16. Plaintiffs also seek to recover punitive damages. *Id.* ¶ 29.

21. Although defendants dispute in all respects plaintiffs' allegations of liability and injury, comparison of the allegations here to cases featuring comparable claims demonstrates that the value of such cases well exceeds $75,000, both with respect to jury awards and court-approved settlements. *See, e.g., Potter v. Firestone Tire & Rubber Co.*, No. 81723 (Cal. Super. Ct. Monterey Cnty. Dec. 31, 1987), Mealey's Jury Verdicts & Settlements 53 (Sept. 17, 2007) (jury award of $142,975 for future medical monitoring); *In re Train Derailment Near Amite, LA*, No. Civ. A, MDL No. 1531, 2006 WL 1561470, *25 (E.D. La. May 24, 2006) (approving $8.275 million settlement of property damage, economic damage and environmental contamination claims relating to train derailment and resulting chemical release); *see also In re Train Derailment Near Amite, LA*, No. MDL No. 1531, 2004 WL 32915, at *3 (E.D. La. Jan. 6, 2004) (denying remand motion and finding that individual plaintiff met amount in controversy on claims of property damage and lost business in connection with train derailment and chemical release); *Prince v. Jordan*, No. 93768 (Ohio Ct. C.P. Lorrain Co. Oct. 23, 2000), 2000 Mealey's Jury Verdicts & Settlements 370 (Aug. 14, 2007) (jury award of $100,000 in compensatory damages for nuisance).

22. Plaintiffs have alleged multiple causes of action, and any combination of their claims is likely to exceed the $75,000 jurisdictional requirement. For example, in an action involving a forced residential evacuation after a railcar caught fire and burned for three days, a jury awarded one plaintiff "$60,000.00 for physical pain and suffering, $25,000.00 for mental anguish, and $15,000.00 for evacuation/inconvenience." *Adams v. CSX R.Rs.*, 902 So. 2d 413, 416 (La. Ct. App. 2005). In a case involving an oil refinery fire, the Fifth Circuit concluded that the former jurisdictional amount of $50,000 was facially apparent in an action alleging the same types of damages plaintiffs seek in this matter, not including the property damage and chemical clean-up costs alleged here. *See In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 388 (5th Cir. 2009) (alleged damages included "individual and familial suffering; injuries to physical and mental health, including, but not limited to, emotional distress and mental anguish from the knowledge of exposure to a hazardous substance; expenses incurred by reason of illness caused by the nuisance; fear and apprehension of further exposure to, and impact from, hazardous chemicals; economic and financial harm; loss of enjoyment of life and peaceful use of property," and punitive damages). Upon motion to remand, the district court in the same case clarified that the claims reached the $50,000 amount in controversy even without accounting for the requested punitive damages. *In re 1994 Exxon Chem. Plant Fire*, No. 94-MS-3-C, 2001 WL 36180225, at *14 (M.D. La. Apr. 19, 2001) ("In each of these 16 cases the amount in controversy is present based on the plaintiffs' allegations without regard to the claim for exemplary damages.").

23. In addition to compensatory damages, the Complaint seeks to hold CSXT liable for costs of property decontamination, as well as future medical monitoring due to "expos[ure] to burning crude oil." Compl. ¶¶ 16, 26. Both environmental property decontamination and medical monitoring are programs with significant transaction costs.

24. West Virginia courts have awarded amounts significantly in excess of $75,000 in cases alleging environmental contamination and property damage. *See, e.g., Perrine v. E. I. du Pont de Nemours & Co.*, 694 S.E.2d 815 (W. Va. 2010) (compensatory damages award in excess of $55 million for remediation of property); *Fuller v. Ashland Oil, Inc.*, JVR No. 62278, 1990 WL 462335 (Verdict & Settlement Summary) (W. Va. Cir. Ct. May 1990) (award of $330,000 in compensatory damages and $2.5 million in punitive damages to single plaintiff on claims of emotional distress, property damage and health anxiety resulting from emission of pollutants by nearby oil refinery); *Newton v. Ashland Oil, Inc.*, JVR No. 62278, 1990 WL 462337 (Verdict & Settlement Summary) (W. Va. Cir. Ct. May 1990) (award of $320,000 in compensatory damages and $2 million in punitive damages to single plaintiff in similar case against oil refinery).

25. In determining the amount in controversy, the Court must also consider the value of plaintiffs' medical monitoring claims. In West Virginia, damage awards funding the creation and maintenance of a medical monitoring program have been recognized as available in cases, such as this, where plaintiffs claim to have been tortiously exposed to toxic substances, but do not presently exhibit symptoms of any illness or resulting disease. *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 432 (W. Va. 1999). While CSXT denies that any medical monitoring is warranted, the cost of such a program to CSXT, as broadly pled here, should well exceed $75,000. The Complaint asserts that the derailed train cars were carrying "highly flammable Bakken crude oil" which spilled into the ground and Kanawha River, contaminating plaintiffs' food and water supply. Compl. ¶ 6. Plaintiffs further claim that they breathed "harmful chemicals, causing present and [future] damage to their lungs and other bodily organs and tissues." *Id.* ¶ 16. In sum, plaintiffs seek medical monitoring for any number of "chemicals" related to "crude oil" and for any number of unspecified illnesses, affecting numerous yet

unidentified "organs and tissues" over the course of an unidentified and potentially unlimited period of years into the future.

26. The Complaint seeks to require CSXT to establish, administer, and fund a broad medical monitoring program indefinitely. Such a program, as pled, would entail detailed toxicological assessments of the risks associated with crude oil and other as yet unspecified "harmful chemicals" to which plaintiffs claim to have been exposed (both individually and in multiple combinations due to varying exposure routes and circumstances), followed by on-going screening and, presumably, treatment of any illness or injury that develops in the future—all indefinitely. The clerical and administrative costs of so vast a program for all 97 plaintiffs in this case, standing alone, would exceed $75,000.[1] *See, e.g., Perrine*, 694 S.E.2d 815 (upholding West Virginia jury's award of $130 million to fund medical monitoring program in environmental contamination suit); *Allen v. Monsanto Co.*, No. 13-0418 (Putnam County 04-C-465), 2013 WL 6153150, at *3, *7 (W. Va. Nov. 22, 2013) (Memorandum Decision) (approving settlement of class action toxic contamination claims which included creation of a $21 million fund (possibly to be supplemented by an additional $63 million) for medical monitoring of 5,000

---

[1] Because medical monitoring is injunctive in nature, courts assessing the value of medical monitoring claims in multi-plaintiff cases typically measure that value based on the cost of the entire medical monitoring program requested because such a remedy is tantamount to a "common fund" sought by the plaintiffs which must be fully funded for all plaintiffs in order for any one plaintiff to receive the benefit of the program. *See In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 152-53 (S.D.N.Y. 2001) (holding that, for purposes of determining amount in controversy, medical monitoring claims fall under the "common fund" exception to the rule of anti-aggregation); *In re Baycol Prods. Litig.*, MDL No. 1431, 2003 WL 22038708, at *3-*4 (D. Minn. Feb. 25, 2003) (same); *Jackson ex rel. Jackson v. Johnson & Johnson, Inc.*, No. 01-2113, 2001 WL 34048067, at *5 (W.D. Tenn. Apr. 3, 2001) (same); *Katz v. Warner-Lambert Co.*, 9 F. Supp. 2d 363, 365 (S.D.N.Y. 1998) (same). Accordingly, here, because the cost of the medical monitoring sought by plaintiffs more likely than not exceeds $75,000, the amount in controversy for any individual plaintiff is met.

residents of the allegedly contaminated area); *Mann v. CSX Transp., Inc.*, No. 1:07-cv-3512, 2009 WL 3766056, *6 n.8 (N.D. Ohio Nov. 10, 2009) (value of medical monitoring program in similar train derailment case estimated by plaintiff's expert in the range of $277 million to $488 million); *Gates v. Rohm & Haas Co.*, No. 06-1743, 2008 WL 4078456, at *1 (E.D. Pa. Aug. 22, 2008) (Memorandum and Order) (allocating $1.4 million to medical monitoring program in chemical contamination case based on cost estimate of $1,400 per plaintiff); *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 838 (D.C. Cir. 1984) (affirming injunction requiring defendant to create a $450,000 fund to cover costs of diagnostic tests for plaintiff group of 40 Vietnamese children involved in air crash); *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 837 (Cal. 1993) (affirming award of $142,975 for medical monitoring for group of four property owners who claimed exposure to toxic wastes in nearby landfill).

27.   Over and above compensatory relief, the Complaint also seeks punitive damages. Compl. ¶¶ 28-29. "This Court has previously found that a request for punitive damages, where properly recoverable, inevitably inflates a plaintiff's potential recovery." *Bryant v. Wal-Mart Stores E., Inc.*, 117 F. Supp. 2d 555, 556 (S.D. W. Va. 2000); *see also Hicks v. Herbert*, 122 F. Supp. 2d 699, 701 (S.D. W. Va. 2000); *Chiartas v. Bavarian Motor Works, AG*, No. 2:00-0499, 2000 WL 1091467 (S.D. W. Va. Aug. 3, 2000) (citing *Weddington v. Ford Motor Credit Co.*, 59 F. Supp. 2d 578, 584 (S.D. W. Va. 1999)); *Cline v. Matney*, 20 F. Supp. 2d 977 (S.D. W. Va. 1998). Claims for punitive damages "augment compensatory damages in determining the amount in controversy unless it can be said to a legal certainty that plaintiff cannot recover punitive damages in the action." *Bryant*, 117 F. Supp. 2d at 557 (finding invocation of punitive damages in complaint sufficient to meet amount in controversy where compensatory damages for medical expenses and lost wages amounted to approximately $7,500); *see also Hicks*, 122 F.

Supp. 2d at 701 (holding that plaintiff's attempt to limit amount in controversy through stipulation was rendered ineffective due to request for punitive damages).

28.   The Complaint alleges that plaintiffs' injuries were caused by CSXT's willful, wanton and reckless conduct and seeks punitive damages as a result. *See* Compl. ¶¶ 28-29. In West Virginia, punitive damages may be recoverable in tort actions where defendant's conduct was "wanton, willful or reckless." *Smith v. Perry*, 359 S.E.2d 624, 625 (W. Va. 1987). Awards of punitive damages for comparable claims based on West Virginia tort law demonstrate that the punitive damages that plaintiffs will seek would more likely than not well exceed $75,000. *See, e.g., Perrine*, 694 S.E.2d at 896 (upholding punitive damages award of $117 million in negligence, nuisance and trespass case relating to alleged environmental contamination); *Fuller*, 1990 WL 462335 (punitive damages award of $2.5 million to single plaintiff on environmental pollution claims); *Newton*, 1990 WL 462337 (punitive damages award $2 million to single plaintiff in similar case).

29.   Apart from awards in comparable cases, calculation of the potential punitive damages award in this case in this case can be guided by the recently enacted West Virginia statutory formula for such damages. West Virginia Code § 55-7-29 provides that the punitive damages that may be awarded in a civil case may not exceed the greater of $500,000 or four times the award of compensatory damages. W. Va. Code § 55-7-29 (2015). Even taking the potentially lower of the two amounts of punitive damages available to plaintiffs under West Virginia law (*i.e.*, four times the award of compensatory damages), an individual plaintiff here need only be awarded $15,000 in compensatory damages to meet the $75,000 amount in controversy threshold. *See Brown v. Paducah & Louisville Ry., Inc.*, No. 3:12-CV-00818-CRS, 2013 WL 5273773, at *4 (W.D. Ky. Sept. 17, 2013) (employing similar multiplier analysis in

train derailment/chemical release case involving claims of property damage and personal injury to determine that $5 million class action amount in controversy requirement was met based on plaintiffs' invocation of punitive damages).

30. Considering plaintiffs' requests for relief individually and in combination, a reasonable and common-sense reading of the Complaint demonstrates that it is more likely than not that the amount in controversy exceeds $75,000. This action is thus properly removed pursuant to 28 U.S.C. § 1332.

**WHEREFORE,** defendants hereby respectfully give notice that the above action, formerly pending against it in the Circuit Court of Wayne County, West Virginia, is removed to the United States District Court for the Southern District of West Virginia.

/s/Marc E. Williams
Marc E. Williams (WV Bar No. 4062)
Robert L. Massie (WV Bar No. 5743)
Melissa Foster Bird (WV Bar No. 6588)
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
949 Third Ave., Suite 200
Huntington, WV 25701
Phone: (304) 526-3501
Fax: (304) 526-3541
Email: marc.williams@nelsonmullins.com
Email: bob.massie@nelsonmullins.com
Email: melissa.fosterbird@nelsonmullins.com

**ATTORNEYS FOR CSX TRANSPORTATION, INC. AND CSX CORPORATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

**BRANDY SIGMAN,** *et al.*

　　　　　Plaintiffs,

v.　　　　　　　　　　　　　　　　　Civil Action No. 3:15-cv-13328

　　　　　　　　　　　　　　　　　　Removed from the Circuit Court
　　　　　　　　　　　　　　　　　　of Wayne County, West Virginia

**CSX CORPORATION, and**
**CSX TRANSPORTATION, INC.,**

　　　　　Defendants.

## CERTIFICATE OF SERVICE

　　　　I hereby certify that a true and correct copy of the foregoing ***"Notice of Removal"*** has been furnished to the following recipients by U.S. Mail, postage prepaid, this 21st day of September, 2015:

| | |
|---|---|
| P. Rodney Jackson<br>**Law Office of P. Rodney Jackson**<br>401 Fifth Third Center<br>700 Virginia Street East<br>Charleston, WV 25301<br>Phone: 304.720.6783<br>Email: prodjackson27@yahoo.com<br>***Counsel for Plaintiffs*** | Mark Bryant<br>Emily Roark<br>**Bryant Law Center**<br>601 Washington Street<br>Paducah, KY 42003<br>Phone: 270.442.1422<br>***Counsel for Plaintiffs to be***<br>***admitted Pro Hac Vice*** |

Travis A. Griffith
**Griffith Law Center, PLLC**
One Bridge Place
10 Hale Street, Suite 302
Charleson, WV 25301
Phone: 304.345.8999
Email: travis@protectinwv.com
***Counsel for Plaintiffs***

Calvin C. Fayard, Jr.
D. Blayne Honeycutt
Wanda J. Edwards
**Fayard & Honeycutt, APC**
519 Florida Avenue, SW
Denham Springs, LA 70726
Phone: 225.664.4193
Facsimile: 225.664.6925
*Counsel for Plaintiffs, to be admitted Pro Hac Vice*

/s/ Marc E. Williams