IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

BRANDY SIGMAN, and all other persons
and entities listed in this complaint,

                Plaintiffs,

v.                                                  CIVIL ACTION NO. 3:15-13328

CSX CORPORATION,
CSX TRANSPORTATION, and
SPERRY RAIL, INC.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant CSX Transportation's ("CSXT") Motion to Dismiss Amended Complaint (ECF No. 29) and Defendant Sperry Rail, Inc.'s ("Sperry") Motion to Dismiss Amended Complaint (ECF No. 41). For the reasons set forth below, Defendants' Motions are DENIED.

        **I.**        **Factual Background**

On February 16, 2015, a CSXT train, consisting of two locomotives and 109 tank cars, derailed at or near Mount Carbon, Fayette County, West Virginia. According to the Amended Complaint, between 14 and 17 tanker cars spilled thousands of gallons of Bakken crude oil onto the ground and into the Kanawha River. A flaw in the tracks caused the derailment, resulting in release of the crude oil. Several explosions and fires occurred in the immediate area of the derailment, and approximately 300 families were evacuated. Water services for several small communities were interrupted, and the Governor declared a state of emergency. CSXT and CSX Corporation ("CSX") owned and operated the train and the tracks. Sperry was a contractor hired

by CSXT to inspect the railroad tracks, and had previously inspected the section where the derailment occurred.

Plaintiffs are all residents of Fayette County who resided near the derailment. Their Amended Complaint sets out claims of negligence, public nuisance, private nuisance, and trespass. In discussing Defendants' Motions the Court will address each theory of liability and the specific facts alleged in the Amended Complaint.

## II. Standard of Review

To overcome a motion to dismiss under Rule 12(b)(6), a complaint must be plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and citations omitted). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id.* (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotation marks and citations omitted). Finally, "[a]lthough for the purposes of a motion to dismiss we must take

all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III. Discussion

Defendant Sperry indicated in its memorandum in support of its Motion to Dismiss that it "joins in CSXT's previously filed Motion to Dismiss and supporting Memorandum of Law and adopts and incorporates CSXT's arguments and positions set forth in Sections I through VI of its Memorandum of Law as if set forth herein." ECF No. 42, at 4. Therefore, the following discussion will first discuss CSXT's argument, incorporated by Sperry, and will conclude with the arguments raised specifically by Sperry.

1. Count 1 - Negligence

In Count 1 of Plaintiffs' Amended Complaint, Plaintiffs allege that Defendants negligently operated and inspected the railroad, resulting in the derailment of tanker cars and subsequent spillage of crude oil. In sum, Plaintiffs allege a specific flaw in the tracks was discovered by Sperry but left uncorrected by Sperry or CSXT. Defendants do not challenge the sufficiency of the negligence claim; rather, Defendants argue that Plaintiffs claims of injury are insufficient under West Virginia law.

Defendants assert Plaintiffs pled only economic losses resulting from negligence. Therefore, Defendants argue that under *Aikens v. Debow,* 541 S.E.2d 576, 589 (W. Va. 2000), absent (1) physical harm to person or property, (2) contractual relationship or (3) other special relationship, recovery for purely economic loss due to negligence is not permitted.[1] However, in *Good v. American Water Works Co.,* No. 2:14-01374, 2015 WL 3540509, at *3, 4 (S.D.W. Va.

---

[1] This ruling was later reaffirmed in *Eastern Steel Constructors, Inc. v. City of Salem*, 549 S.E.2d 266, 272 (W.Va. 2001). However, in *Eastern*, a special relationship was found between the design professional and contractor; therefore plaintiff was permitted to recover economic losses.

June 4, 2015), Judge Copenhaver, citing *Aikens*, noted at a similar stage in litigation (i.e. Motion to Dismiss), he could not apply the *Aikens* rule because Plaintiffs claimed physical property damage to pipes, water heaters, and other appliances, not only economic loss. Specifically, Judge Copenhaver held,

> [t]he truth of the foregoing allegation must be accepted at this point, along with the reasonable and favorable inferences that flow from it. Accordingly, the court is unable to conclude as a matter of law that Counts One, Three, Seven, Eleven, Thirteen, and Fourteen are flawed as a matter of law as running contrary to the economic loss rule. The targeted counts in the operative pleading allege plausible claims for relief.

*Id.* at 4.

Similarly here, Plaintiffs' Amended Complaint includes contentions of physical harm to both person and property. Specifically, paragraphs 102–106 of the Amended Complaint describe the release of crude oil on the ground and into Kanawha River near Mount Carbon, West Virginia, contaminating water supplies and requiring evacuation. ECF No. 18, at ¶102–106. These claims seem to allege economic injury. However, paragraph 105 also contains a general allegation of "real and personal property damage" in addition to economic losses. *Id.* at ¶ 105. Then, in paragraph 116, Plaintiffs allege a series of injuries, including that they "breathed the harmful chemicals" and "were exposed to the harmful chemicals" causing damage to their lungs, skin, other bodily organs and tissues (*Id.* at ¶ 116(a), (b)); "[t]he harmful chemicals polluted and contaminated their food and water supplies" (*Id.* at ¶ 116(c)); Plaintiffs had to "clean… contamination from their real and personal property" (*Id.* at ¶ 116(h)); and finally that their real and personal property has been damaged or diminished in value as a result of the contamination (*Id.* at ¶ 16(i), (j)). Therefore, consistent with Judge Copenhaver in *Good*, this Court finds that Plaintiffs have alleged physical injury and property damage in addition to economic loss. These allegations set forth plausible claims for relief and must be accepted at this point.

Additionally, even if the Court agreed with Defendants' argument that Plaintiffs alleged economic damage only (ignoring the property damage, personal injury, and expenses related to these), the Court finds that a "special relationship" could exist between Defendants and at least some of the Plaintiffs – specifically, the Plaintiffs who reside adjacent to the railroad and were evacuated. In *Aikens*, the Court cited and relied upon *People Express Airlines, Inc. v. Consolidation Rail Corp.,* 495 A.2d 107 (N.J. 1985), a case similar to the matter at hand, where a tanker car leaking a dangerous chemical caused the evacuation of businesses adjacent to the spill. In its decision to permit recovery of economic damages without damage to person or property, the Court held:

> [A] a defendant owes a duty of care to take reasonable measure to avoid the risk of causing economic damages, aside from physical injury, to particular plaintiffs or plaintiffs comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct. A defendant failing to adhere to this duty of care may be found liable for such economic damages proximately caused by its breach of duty.

*Id.* at 116. The Court further noted the following reasons for its decision to permit recovery for economic loss:

> [T]he close proximity of the North Terminal and People Express Airlines to the Conrail freight yard; the obvious nature of the plaintiff's operations and particular foreseeability of economic losses resulting from an accident and evacuation; the defendants' actual or constructive knowledge of the volatile properties of ethylene oxide and the existence of an emergency response plan prepared by some of the defendants (alluded to in the course of oral argument), which apparently called for the nearby area to be evacuated to avoid the risk of harm in case of an explosion.

*Id.* at 118.

For reasons almost identical to those found in *People Express*, including proximity between the "spill" site and Plaintiffs' property, the "obvious" nature of Plaintiffs' interests, the foreseeable loss from evacuation, and Defendants' knowledge of crude oil and its risks, the Court finds that a "special relationship" could exists between Defendants and Plaintiffs residing adjacent to the

railroad, therefore permitting recovery for economic loss without damage to person or property. For these reasons, Defendant CSXT's Motion to Dismiss Count One I of Plaintiffs' Amended Complaint, adopted also by Sperry, is denied.

    2. Count 2 – Public Nuisance

Here, the Amended Complaint asserts that the "release and migration of toxic substances into the area waterways" constituted a public nuisance. ECF No. 18, at ¶ 120. The factual basis for this conclusory allegation is found in preceding factual assertions already noted. Plaintiffs' public nuisance claim is premised on allegations that Defendants caused contamination of the Kanawha River, a waterway that serves as a source of drinking water for several municipal and/or local public water services. The Amended Complaint identifies six small communities where "water service was interrupted," forcing Plaintiffs to purchase water from other sources and manage with less water than needed. *Id.* at ¶¶ 103, 106. Additionally, a state of emergency was declared. *Id.* at ¶ 104.

> West Virginia law defines public nuisance as:
>
> [A]n act or condition that unlawfully operates to hurt or inconvenience an indefinite number of persons. The distinction between a public nuisance and a private nuisance is that the former affects the general public, and the latter injures one person or a limited number of persons only. Ordinarily, a suit to abate a public nuisance cannot be maintained by an individual in his private capacity, as it is the duty of the proper public officials to vindicate the rights of the public.

*Hark v. Mountain Fork Lumber Co.*, 34 S.E.2d 348, 354 (W.Va. 1945). In other words, West Virginia requires private Plaintiffs to demonstrate a "special injury" to have standing to pursue a public nuisance claim. *Id.; Rhodes v. E.I. du Pont de Nemours and Co*., 636 F.3d 88, 97 (4th Cir. 2011)(hereinafter "*Rhodes II*")*(*finding no special injury because Plaintiffs' injury was the same as the general public – i.e. public water supply contaminated).

This "special injury" requirement was discussed in greater detail in *Briers v. Alderson*, 133 S.E. 373, 375 (W.Va. 1926), where the Court explained,

> The proof shows that defendant kept large piles of sand, gravel, logs, etc., stored in the street of Bellepoint for months at a time. Even the witnesses for defendant so admit. This storage was in front of a lot owned by Smith's wife. Smith had built a house on this lot, and resided there. He testified that the material piled in the street stopped up the ditch and caused water to overflow his garden. This storage therefore caused Smith special injury, not suffered by the public at large, and thus gave him the right to seek injunctive relief.

More recently, in *Rhodes v. E.I. du Pont de Nemours and Co.*, 657 F. Supp. 2d 751, 771 (S.D.W. VA. 2009)(hereinafter "*Rhodes I*"), Judge Goodwin discussed another example of a "special injury" exemplified in *Taylor v. Culloden Public Service District*, 591 S.E.2d 197, 205–06 (W. Va. 2003), where Plaintiffs suffered an injury "different in kind from the general public because the discharged pollutants damaged their private property." *Rhodes I*, 657 F. Supp. 2d at 771. These cases illustrate the "special injury" required to successfully plead a public nuisance claim.

Here, Plaintiffs have alleged that they suffered "special injuries" different in type than the comparative population of Fayette County. Specifically, they argue that "the fact that the plaintiffs were evacuated is a special injury as compared to other residents of Fayette County who may have been injured as a result of the derailment." ECF No. 36, at 7. In *Good,* the Court held that "in view of the difficulty of ascertaining and applying the special injury requirement, the better course is to await development of the evidentiary record following discovery." *Good v. Am. Water Works Co.,* No. 2:14-01374, 2015 WL 3540509, at *10 (S.D.W. Va. June 4, 2015). The Court agrees and finds that Plaintiffs sufficiently allege, at this stage of litigation, that Defendants created a public nuisance. Therefore, Defendant CSXT's Motion to Dismiss Count II of the Amended Complaint, adopted also by Sperry, is denied.

3. Count 3 – Private Nuisance

In Count III of Plaintiffs' Amended Complaint, Plaintiffs allege that Defendants' "release of toxic substances . . . . migrated to Plaintiffs' residences, disturbed their use of the subject property and rendered its physical occupation uncomfortable," all of which caused a private nuisance as to Plaintiffs. ECF No. 18, at ¶ 123. West Virginia law defines private nuisance as "a substantial and unreasonable interference with the private use and enjoyment of another's land. The definition of private nuisance includes conduct that is intentional and unreasonable, negligent or reckless, or that results in abnormally dangerous conditions or activities in an inappropriate place." *Hendricks v. Stalnaker*, 380 S.E.2d 198, 200 (W. Va. 1989); *See* Restatement (Second) of Torts §§ 821D, 822 (Am. Law Inst. 1979). Further, regarding the overlap between claims for private nuisance and trespass, Comment D and E in the Second Restatement of Torts explain that claims for private nuisance and trespass differ in that the latter requires interference with possession, while the former only requires interference with use and enjoyment. Restatement (Second) of Torts § 821D (Am. Law Inst. 1979). Both claims may be asserted, and Plaintiffs assert both claims here.

Plaintiffs' allegations of private nuisance are sufficient to withstand a Motion to Dismiss. Plaintiffs' claims - that tanker cars derailed and ruptured causing several fires and explosions that deposited debris and contaminants on Plaintiffs' property, thereby forcing many of them to evacuate - plausibly allege a substantial and unreasonable interference with the use and enjoyment of Plaintiffs' land.[2] As such, Defendant CSXT's Motion to Dismiss Count III of Plaintiffs' Amended Complaint, adopted also by Sperry, is denied.

---

[2] Defendants cite *Sanders v. Norfolk Southern Railway Co.*, No. 10-1189, 2010 WL 4386881 (4th Cir. Nov. 5, 2010) for the proposition that the Fourth Circuit has held that "a derailment resulting in chemical release and temporary evacuation does not suffice to plead a private nuisance claim." ECF No 46, at 5–6. However, this case is inapplicable to the current factual scenario because, in *Sanders*, the Fourth Circuit was applying South Carolina law which requires private nuisance claims to allege a "continuing event or act, or a single event that produces a continuing result or is regularly repeated." *Sanders*, 2010 WL 4386881, at *3 (internal

    4.   Count 4 – Trespass

Count IV of Plaintiffs' Amended Complaint alleges trespass by Defendants. Specifically, Plaintiffs claim that "Defendants negligently caused the release of contaminants into the atmosphere and properties upon which Plaintiffs reside and use for recreational and/or commercial purposes." ECF No. 18, at ¶ 124. Plaintiffs also incorporated by reference their preceding paragraphs in the Amended Complaint which state in more detail the cause, nature and extent of the "release of contaminants." *Id.* West Virginia law defines trespass as "an entry onto another man's ground without lawful authority, and doing some damage, however inconsiderable, to his real property." *Hark v. Mountain Fork Lumber Co.*, 34 S.E.2d 348, 352 (W. Va. 1945). Additionally, as indicated in *Rhodes I*, an invasion onto another's land must be tangible and constitute an "interference with possession" in order to be an actionable trespass claim. *Rhodes I*, 657 F. Supp. 2d at 771.

Here, Plaintiffs successfully plead the abovementioned elements of a trespass claim. As discussed earlier, Plaintiffs' Amended Complaint contains allegations regarding Defendants' release of harmful contaminants onto Plaintiffs' property, resulting in subsequent property damage, "interference with possession," and eventual evacuation of some of the Plaintiffs. Therefore, at this stage of litigation, Count IV of Plaintiffs' Amended Complaint contains "sufficient factual matter . . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Defendant CSXT's Motion to Dismiss Count IV of Plaintiffs' Amended Complaint, adopted also by Sperry, is denied.[3]

---

citations omitted). This additional element is not required under West Virginia law, and therefore this case and the Fourth Circuit's analysis is inapplicable.

[3] Defendants also argue Plaintiffs' claim must fail because in West Virginia a trespass claim must be intentional. This is incorrect. Rather, "liability for trespass to property can . . . . be found where there is an intentional intrusion, negligence, or some extrahazardous activity on the part of the alleged wrongdoer." *Bailey v. S.J. Groves & Sons Co.*, 230 S.E.2d 267, 269 (W. Va. 1976).

### 5. Preemption Argument

Next, Defendants argue that Plaintiffs' claims are preempted by federal rail law, specifically the Interstate Commerce Commission Termination Act of 1995 ("ICCTA") and the Federal Railroad Safety ACT ("FRSA"). Specifically, Defendants note, "[t]o the extent plaintiffs challenge CSXT's general operation of a train, such claims are preempted by the [ICCTA]. To the extent plaintiffs premise their tort claims on duties beyond those established by federal rail safety regulations, those claims are preempted by the [FRSA]." ECF No. 30, at 12. The Court disagrees with Defendants' argument and will address each preemption argument below.

First, regarding the ICCTA, Section 10501 reserves exclusive jurisdiction for the Surface Transportation Board ("STB"), an agency within the Department of Transportation, over:

> (1) Transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operation rules), practices, routes, services, and facilities of such carriers; and
>
> (2) The construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, . . . .

49 U.S.C. § 10501(b). Here, Plaintiffs bring claims of negligence, public nuisance, private nuisance, and trespass against the Defendants, specifically alleging that Defendants negligently inspected rail track and negligently operated a train which ultimately led to the derailment of tanker cars. These allegations involve railroad safety procedures, "which the FRSA – not the ICCTA – was enacted to regulate." *Smith v. CSX Transp., Inc.*, No. 3:13-cv-2649, 2014 WL 3732622, *2 (N.D. Ohio July 25, 2014).

Although not binding on the Court, the Court finds *Smith* persuasive (for issues of preemption under both the ICCTA and the FRSA) due to its factual similarity to the case at hand. In *Smith*, Plaintiffs alleged CSXT negligently inspected and used defective rail track, which

resulted in a derailment and chemical spill. On the subject of ICCTA preemption, the Court held, "Plaintiffs' claims of negligence and qualified nuisance are based solely upon allegations that CSX failed to comply with FRA safety regulations regarding the inspection of defective rails. Because those claims relate to rail safety, and do not amount to the economic regulation of railroads, the ICCTA does not preempt Plaintiffs' claims." *Id.* (internal citations omitted). For reasons identical to those in *Smith*, the Court does not find that Plaintiffs' claims here are preempted by the ICCTA. Plaintiffs' claims all relate to rail safety, while the preemption scope of the ICCTA envelops the economic regulations of railroads.

Next, the Court will consider Defendants' preemption argument under the FRSA. As stated by the Fourth Circuit, "Congress enacted the FRSA 'to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents.'" *Harris v. Norfolk S. Ry. Co.*, 784 F.3d 954, 957 (4th Cir. 2015). "To prevail on the claim that the regulations have a preemptive effect, petitioner must establish more than that they 'touch upon' or 'relate to' that subject matter, for 'covering' is a more restrictive term which indicates that preemption will lie only if the federal regulation substantially subsumes the subject matter of the relevant state law." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) (internal citations omitted). Here, Plaintiffs contend that negligent track maintenance by Defendants was a significant contributing cause of the derailment. Additionally, they argue that the inspection regulations found in the FRSA "merely 'relate[] to' or 'touch[] upon' maintenance issues and as such the FRSA does not completely subsume the issue of maintenance and preempt claims based on the failure to provide adequate maintenance." ECF No. 36, at 14.

> The following description of the FRSA and the scope of its preemption is instructive:
>
> The FRSA preempts any state or local law, regulation, or order that is 'an additional or more stringent law, regulation, or order related to railroad safety or security.' 49

> U.S.C. § 20106(a)(2). But states may enforce a law regarding railroad safety or security until the FRA prescribes a federal regulation covering the specific subject matter. *Id.* § 20106(a)(2). *See also* 49 C.F.R. § 1 .89(a) (delegating the Secretary of Transportation's authority under 49 U.S.C. § 20106 to the FRA). Even when the FRA prescribes safety standards, a state may still enforce an 'additional or more stringent law' related to the same subject matter if: (1) it is necessary to prevent a local safety or security hazard; (2) it is not incompatible with a federal regulation on the safety issue in question; and (3) it does not 'unreasonably burden' interstate commerce. *Id.* § 20106(a)(2). A 2007 clarification amendment further provides 'nothing in [the preemption] section of the FRSA shall be construed as preventing an action under State law seeking damages for personal injury, death, or property damage' when the claim alleges that a party has 'failed to comply' with a federal regulation, the party's own safety standard, or a state law or regulation that has met the criteria set forth in Section 20106(a)(2). *Id.* § 20106(b)(1).

*Smith*, 2014 WL 3732622, at *3. In other words, the FRSA does not completely preempt all state law tort claims directed at railroad safety. Additionally, the Fourth Circuit notes in *Harris* that the FRSA, "provides very few specific limitations concerning how inspections must be conducted." *Harris*, 784 F.3d at 958.

Here, Plaintiffs have asserted that "CSXT failed to inspect, maintain, and repair the track involved in the derailment according to federal requirements and CSXT's own inspection, maintenance and repair requirements." ECF No. 36, at 14. Under similar circumstances in *Smith*, the Court held "[t]he Amended Complaint alleges a failure to comply with the visual inspection regulations, and Plaintiffs do not base a breach of duty claim on the failure to use inspection methods not required by federal regulations . . . . As such, Plaintiffs' claims are not preempted by the FRSA." *Smith*, 2014 WL 3732622, at *3. The Court finds that the same analysis holds true here and Plaintiffs' claims are not preempted by the FRSA. For these reasons, Defendants' arguments regarding preemption are denied.

6. <u>Punitive Damages</u>

Defendants argue that punitive damages are not a stand-alone claim. The Court agrees; however, it will not dismiss Plaintiffs' claim for punitive damages at this time. Rather, as Plaintiffs

point out, Plaintiffs' claim for punitive damages will depend on whether they demonstrate "wanton, willful, or reckless conduct" on the part of the Defendants. *Crawford v. Snyder*, 719 S.E.2d 774, 783 (W. Va. 2011).

As such, the Court denies Defendant CSXT's Motion to dismiss Plaintiffs' claim for punitive damages, adopted also by Sperry, at this time.

7. <u>Sperry's Independent Contractor Argument</u>

Defendant Sperry, in addition to joining and adopting CSXT's arguments in Sections 1-6, also argues that, as a third-party contractor, it owes no duty of care to Plaintiffs. In West Virginia, the general rule, subject to several exceptions, states:

> [A]n independent contractor is not liable for injuries sustained by, or the death of, a third person after the work contracted for has been completed, turned over to the contractee, and accepted by the contractee, though the injury results from the contractor's failure properly to carry out his contract; and when the work contracted to be performed by an independent contractor is completed by the contractor and accepted by the contractee, the latter is responsible for existing defects.

*Roush v. Johnson*, 80 S.E.2d 857, Syl. 6 (W. Va. 1954). An exception to this general rule, however, states:

> An independent contractor is liable for injuries sustained by, or the death of, a third person, after the work contracted to be performed has been completed, turned over to the contractee, and accepted by him, where work performed and turned over is inherently and intrinsically dangerous, that is, so defective by reason of the independent contractor's negligence, as to be imminently dangerous to a third person, or where the independent contractor has full knowledge of the defects in the work performed by him, which renders the completed work dangerous to the owner or his invitee, and willfully conceals the same, or where the dangerous condition of the work caused by the independent contractor's negligence was not known to the contractee and the defect was so concealed that the contractee would not have discovered it by reasonable inspection.

*Id.* at Syl. 7.

Sperry argues that under the general rule for independent contractors it owes no duty of care to Plaintiffs, who are third parties to the contract between Sperry and CSXT. Additionally,

Sperry alleges that none of the abovementioned exceptions to the independent contractor rule apply to the case here. With respect to the first exception, Sperry specifically claims that "there is no allegation or claim that merely testing a rail is an 'inherently and intrinsically dangerous' activity." ECF No. 42, at 6. The Court finds this argument misses the point.

Sperry's role in this case was "to conduct tests to search for [internal] rail flaws." ECF No. 42, at 1. It was engaged by CSXT to perform this duty. Although merely testing a rail for defects may not be intrinsically dangerous in and of itself, the Syllabus point in *Roush* states a more detailed description of the exception, noting, "where work performed and turned over is inherently and intrinsically dangerous, <u>that is, so defective by reason of the independent contractor's negligence, as to be imminently dangerous to a third person</u> . . . ." *Roush*, 80 S.E.2d at Syl. 7 (emphasis added). This exception, applied in full, is applicable here. Plaintiffs allege that Sperry's negligence in discovering a Vertical Split Head ("VSH") on two occasions just months before the derailment, but failing to further test and warn CSXT of the VSH, caused the derailment and resulted in injury to the Plaintiffs. ECF No. 53, at 2. As such, and as stated by Plaintiffs in their memorandum in response, "Sperry cannot avoid its duty through the rule abrogating independent contractor duties of care set out in *Roush* . . . . because of the imminent danger created by Sperry's negligent failure to conduct required visual inspections upon identifying the VSH." ECF No. 53, at 5. The Court agrees.

As such, Defendant Sperry's Motion to Dismiss is denied.

### IV. Conclusion

For the foregoing reasons, Defendant CSX Transportation's Motion to Dismiss Amended Complaint (ECF No. 29) and Defendant Sperry Rail, Inc.'s Motion to Dismiss Amended Complaint (ECF No. 41) are **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: May 5, 2016

_____
ROBERT C. CHAMBERS, CHIEF JUDGE