IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

BRANDY SIGMAN, and all other persons
and entities listed in this complaint,

                Plaintiffs,

v.                                                  CIVIL ACTION NO. 3:15-13328

CSX CORPORATION,
CSX TRANSPORTATION, and
SPERRY RAIL, INC.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant CSX Corporation's Motion to Dismiss Amended Complaint. ECF No. 39. For the reasons stated below, Defendant's Motion is GRANTED.

**I.    Factual Background**

On February 16, 2015, a CSX Transportation ("CSXT") train, consisting of two locomotives and 109 tank cars, derailed at or near Mount Carbon, Fayette County, West Virginia. According to the Amended Complaint, between 14 and 17 tanker cars spilled thousands of gallons of Bakken crude oil onto the ground and into the Kanawha River. A flaw in the tracks caused the derailment, resulting in release of the crude oil. Several explosions and fires occurred in the immediate area of the derailment, and approximately 300 families were evacuated. Water services for several small communities were interrupted, and the Governor declared a state of emergency. CSXT and CSX Corporation ("CSX") owned and operated the train and the tracks. Sperry Rail, Inc. ("Sperry") was a contractor hired by CSXT to inspect the railroad tracks, and had previously

inspected the section where the derailment occurred. Plaintiffs are all residents of Fayette County who resided near the derailment. Their Amended Complaint sets out claims of negligence, public nuisance, private nuisance, and trespass.

## II. Standard of Review

To overcome a motion to dismiss under Rule 12(b)(6), a complaint must be plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and citations omitted). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id.* (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotation marks and citations omitted). Finally, "[a]lthough for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III. Discussion

Defendant CSX moves this Court to dismiss Plaintiffs' Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction. Plaintiffs' Amended Complaint contains the following jurisdictional allegations against CSX:

> Defendant CSX Corporation (hereinafter "CSX") is a Virginia Corporation with its principal place of business in Jacksonville, Florida. Defendant CSX is one of the nation's largest transportation companies providing rail based transportation services. Defendant CSX Corporation made annual filings to the federal Securities Exchange Commission ("SEC"). These SEC filings reveal that Defendant CSX Corporation is a top-down operation that fully controls CSX Transportation, Inc. and operates as one business, indivisible and indistinguishable from each other. In its SEC filing, Defendant CSX Corporation describes its corporate structure as owning and operating through its principle operating subsidiary, CSX Transportation, Inc.

ECF No. 18, at ¶ 97. Defendant CSX, however, argues that "the Court lacks personal jurisdiction over [CSX] because it has no contacts with the state of West Virginia, and the contacts of its subsidiary CSXT cannot be attributed to [CSX]." ECF No. 40, at 2. Specifically, Defendant claims:

> [CSX] does not operate, and never has operated, as a railroad. Nor has [CSX] ever constructed, maintained, or operated railroad equipment or track. [CSX] is merely a holding company, authorized by the Interstate Commerce Commission and the Surface Transportation Board to own common carrier railroads. [CSX] owns CSXT, among other subsidiaries. . . . [CSX] and CSXT are separate and legally distinct entities.

ECF No. 40, at 1–2.

In support of these contentions, Defendant has filed an affidavit from Mark Austin, CSX's Assistant Corporate Secretary, who declares that (1) CSX was incorporated under the laws of the Commonwealth of Virginia with a principal place of business in Florida; (2) CSX does not operate as a railroad, has never been a common carrier railroad, and is only authorized to own and control common carrier railroads; (3) CSX has never constructed, maintained, or operated railroad rolling equipment, railroad track, roadbed, or any other railroad equipment; (4) CSX has never been authorized to conduct business in West Virginia; (5) CSX has never had an office in West Virginia,

an officer or other employee in West Virginia, or assets in West Virginia; (6) there is only one director who crosses over and serves on both the CSX Board and CSXT Board; (7) CSXT (the subsidiary) is adequately capitalized with billions of dollars in assets and working capital; (8) CSX does not pay the salaries, expenses, or any losses of CSXT; (9) CSXT does only a de minimus amount of business with CSX, which is administrative in nature; and (10) CSX does not use any property of CSXT as its own. ECF No. 40, Ex. 1, at 1–3.

The Court begins its analysis with a brief discussion of the legal standard for personal jurisdiction. Where a defendant files a motion to dismiss for lack of personal jurisdiction and the court decides the "motion without an evidentiary hearing, the plaintiff need prove only a prima facie case of personal jurisdiction." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). "[T]he district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Id.* To prove that a court has specific jurisdiction over an out-of-state defendant, a plaintiff must show that jurisdiction is authorized by the long-arm statute of the state in which the court sits and that exercise of such jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Where, as here, the state's long-arm statute is coextensive with the full reach of the Due Process Clause, the statutory and constitutional questions merge into one inquiry. *In re Celotex Corp.*, 124 F.3d 619, 627–28 (4th Cir. 1997).

Courts in this Circuit have identified a three-part test for determining whether asserting personal jurisdiction over an out-of-state defendant comports with the Due Process Clause. The Court must examine "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be

constitutionally reasonable." *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotation marks omitted). The first prong of the test reflects the constitutional requirement that an out-of-state defendant "have sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Consulting Eng'rs*, 561 F.3d at 277 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

This Court has previously held that courts generally "presume the institutional independence of a parent corporation and wholly-owned subsidiary when considering the question of whether jurisdiction may be asserted over the parent solely on the basis of the subsidiary's contacts with the forum." *Toney v. Family Dollar Stores, Inc.*, 273 F. Supp. 2d 757, 761 (S.D.W. Va. 2003). In addition, the Supreme Court of Appeals of West Virginia has outlined eleven factors to be considered by a court "in determining whether to assert personal jurisdiction over the parent company of a subsidiary doing business in West Virginia." *Bowers v. Wurzburg*, 501 S.E.2d 479, 490 (W. Va. 1998). "In determining whether to impute CSXT's contacts with West Virginia to its parent, CSX"[1], this Court should look to:

1. Whether the parent corporation owns all or most of the capital stock of the subsidiary;
2. Whether the parent and subsidiary corporations have common directors and officers;
3. Whether the parent corporation finances the subsidiary;
4. Whether the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;
5. Whether the subsidiary has grossly inadequate capital;
6. Whether the parent corporation pays the salaries and other expenses or losses of the subsidiary;
7. Whether the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;
8. Whether in the papers of the parent corporation or in the statement of its officers, the subsidiary is described as a department or division of the parent

---

[1] ECF No. 40, at 6.

> corporation, or its business or financial responsibility is referred to as the parent corporation's own;
> 9. Whether the parent corporation uses the property of the subsidiary as its own;
> 10. Whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest; and
> 11. Whether the formal legal requirements of the subsidiary are not observed.

*Bowers*, 501 S.E.2d at 490; *Toney*, 273 F. Supp. 2d at 762. The burden of demonstrating these factors lies with the Plaintiffs. *Toney*, 273 F. Supp. 2d at 760.

As discussed previously, Defendant's Affidavit by Mark Austin specifically addresses some of these factors. In the Affidavit, Mr. Austin declares (1) there is only one director who crosses over and serves on both the CSX Board and CSXT Board; (2) CSXT (the subsidiary) is adequately capitalized with billions of dollars in assets and working capital; (3) CSX does not pay the salaries, expenses, or any losses of CSXT; (4) CSXT does only a de minimus amount of business with CSX, which is administrative in nature; and (5) CSX does not use any property of CSXT as its own. ECF No. 40, Ex. 1, at 1–3. As it is Plaintiff's burden to sufficiently plead jurisdiction, Plaintiff offers the following argument with respect to the abovementioned factors:

> CSX Transportation Inc., relies on the corporate disclosures of the Defendant with the SEC thereby fulfilling factor (1). As indicated in Mr. Austin's Declaration, Defendant admits that one director of Defendant is also a director of CSX Transportation, thereby meeting factor (2). Looking at Exhibit 4, Defendant invested more than $95.5 million in its West Virginia network, which obviously meets factor (3). Given that the Defendant boasts that CSX Transportation, Inc. is its primary operating subsidiary factor (4) is clearly established. Factor number (7) is completely unknown and is not addressed in any form by Mr. Austin. Factors number (8) and (9) are met based on the clear language adopted by the Defendant in Exhibit 4. Factor (10), like factor (7) is unknown and not addressed by Mr. Austin. Though it is not noted in Mr. Austin's "Declaration", even assuming that the legal formalities of CSX Transportation are observed as required under factor (11), this is of little consequence given the clear establishment of the other factors in the *Bowers* test.

ECF No. 43, at 10. Plaintiffs' argument is flawed for several reasons.

First, with regard to factors 1 and 4, Plaintiffs rely on what they refer to as "the company's own corporate description with the Securities Exchange Commission,"[2] to prove that CSX "owns all or most of the stock of CSXT"[3] and "subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation."[4] In fact, as attached as Exhibit B to the Amended Complaint (ECF No. 24) and explained by the Defendant, this "corporate description" is actually a company description written by Market Watch. ECF No. 24, at 12. Furthermore, the disclosures that Plaintiffs claim were made by the Defendant to the SEC are in fact statistics displayed on Market Watch's CSX "Profile" page. *Id.* Additionally, Defendant notes that the "Income Per Employee" measurement referenced by Plaintiffs, from which Plaintiffs claim that "the only conclusion to be drawn . . . . is that Defendant is including subsidiary employees in this equation" (ECF No. 43, at 7–8), is a ratio presented by this third party that Defendant claims "serves only as a metric for potential investors, not any meaningful calculation or disclosure by [CSX]." ECF No. 54, at 5. Plaintiffs provide no other evidence to support factors 1 and 4 and the Court finds Plaintiffs' misrepresentations unpersuasive.

Regarding factor 2, Defendant admits through the Affidavit of its Assistant Corporate Secretary, that "[CSX's] Board of Directors has twelve members. CSXT's Board of Directors has three members. . . . [O]nly one member of CSX Corporation's Board of Directors, Michael Ward, also sits on the Board of CSXT." ECF No. 40, Ex. 1, at 2. The fact that CSX and CSXT share one common director is not dispositive of personal jurisdiction, but will be considered along with the remaining nine factors.

---

[2] ECF No. 43, at 7.
[3] *Bowers*, 501 S.E.2d at 490; *Toney*, 273 F. Supp. 2d at 762.
[4] *Id.*

Next, Plaintiffs argue that factors 3, 8, and 9, are met through a brief examination of Defendant's own website. Again, however, this evidence is misrepresented. Plaintiffs attempt to attribute all information noted on the website as belonging to and of CSX. However, there is an easily accessible "Corporate Structure" section that clearly notes:

> CSX Corporation is the parent company of several direct and indirect wholly-owned subsidiaries . . . . Each subsidiary is a separate and distinct company. As used in this interned site, "CSX," "CSXT," or "CSX Transportation" refers to CSX Transportation and "CSX Corp." or "CSX Corporation" refer to CSX Corporation.

ECF No. 54, Ex. 1. Plaintiffs attempt to attribute parts of the website that clearly refer to CSX Transportation to CSX Corporation. In a case very similar to the one at hand, the Eastern District of Louisiana addressed this issue, where "plaintiffs attempted to extend jurisdiction over CSX Corp. because of CSXT's presence on its website."[5] In that case, the court held:

> No extensive analysis of the interactive nature of the CSX website is necessary. The "Corporate Structure" page on the website provides in pertinent part that '[a]s used in this Internet site, 'CSX.' 'CSXT,' or 'CSX Transportation' refers to CSX Transportation Inc., and that 'CSX Corp.' or 'CSX Corporation' refers to CSX Corporation'. . . . As to CSX Corporation, the defendant at issue herein, the website is passive and insufficient to serve as the foundation for the exercise of personal jurisdiction. Accordingly the motion to dismiss pursuant to Rule 12(b)(2) is granted.

*Pere Marquette Hotel Partners, LLC v. United States*, No. 09-5921, 2010 WL 559112, at *3 (E.D. La. Feb. 10, 2010). The Court agrees and finds, consistent with *Pere Marquette*, that Plaintiffs' Exhibits depicting images of Defendant's website "merely describe the activities of CSXT, CSX Corp.'s independently operating subsidiary." ECF No. 54, at 5.

Regarding factors 5, 6, 7, 10, and 11, Plaintiffs provide no argument for why these factors weigh in favor of finding personal jurisdiction over Defendant. Rather, they only state that some of these factors are either unknown, not discussed by Mr. Austin in Defendant's Affidavit, or of

---

[5] ECF No. 54, at 5.

little consequence. ECF No. 43, at 10. However, as indicated previously, the burden of demonstrating that these factors are satisfied rests with Plaintiffs. As such, considering Plaintiffs' argument and the factors as a whole, the Court does not find that Plaintiffs have satisfied the factors necessary "to assert personal jurisdiction over the parent company of a subsidiary doing business in West Virginia." *Bowers*, 501 S.E.2d at 490.

In *Fastrip, Inc. v. CSX Corp.*, No. 3:07-cv-66-S, 2007 WL 2127814, at *2 (W.D. Ky. July 24, 2007), a case not binding on the Court but one that the Court nevertheless finds persuasive, the court granted a motion by CSX to dismiss plaintiffs' Complaint for lack of personal jurisdiction. Specifically, the court held,

> The plaintiffs have come forward with nothing to support their assertion of personal jurisdiction over CSX Corporation in this case. They have shown nothing to establish that the suit either arises out of or is related to CSX Corporation's contacts with the forum, or that CSX Corporation has continuous and systematic contacts with Kentucky to justify the exercise of general jurisdiction over it in this instance. . . . The affidavits of Goldman directly refute the allegations that it is licensed in Kentucky and doing business in Kentucky. As the plaintiffs have failed to controvert the Goldman affidavits, but rather simply rest on these statements, there is nothing on which to base a finding that CSX Corporation has the requisite minimum contacts with Kentucky upon which to premise a finding of personal jurisdiction.

*Id.* This decision was issued on facts nearly identical to the situation here. In *Fastrip*, a train derailed and caused a chemical spill near Shepherdsville, Kentucky. *Id.* at *1. Plaintiffs filed a lawsuit against CSX and CSX submitted an affidavit refuting plaintiffs' jurisdictional allegations. *Id.* This decision, coupled with the decision in *Pere Marquette* (which also addressed the jurisdictional sufficiency of claims against CSX in a similar factual scenario), are both consistent with the Court's opinion here to grant Defendant CSX's Motion to Dismiss. Plaintiffs have failed to meet their burden, and as such, Defendant's Motion to Dismiss Amended Complaint (ECF No. 39) is GRANTED.

## IV. Conclusion

For the foregoing reasons, Defendant CSX Corporation's Motion to Dismiss Amended Complaint (ECF No. 39) is **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: May 5, 2016

ROBERT C. CHAMBERS, CHIEF JUDGE