IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

BRANDY SIGMAN, et al.,

        Plaintiffs,

v.                                         CIVIL ACTION NO. 3:15-13328

CSX CORPORATION and
CSX TRANSPORTATION INC.,

        Defendants.

**OMNIBUS ORDER**

Pending before the Court are nine motions filed in anticipation of the impending trial date. In order to hear further argument on these motions, the Court held a Status Conference and Motions Hearing on Monday, February 26, 2018. During the nearly three-hour hearing, the Court ruled from the bench on a few of the currently pending motions. This Omnibus Order seeks to clarify and formalize those rulings.

Upon consideration of the briefing and oral argument, the Court took the following action with regard to four of the currently pending motions: (1) **DENIED** Plaintiffs' Motion for Partial Summary Judgment (ECF No. 223); (2) **GRANTED** Defendant's Motion *in Limine* to Exclude Evidence of the EPA Administrative Order on Consent (ECF No. 228); (3) **DENIED** Defendant's Motion *in Limine* to Exclude Plaintiffs' Expert Dr. April Watkins (ECF No. 232); and (4) **GRANTED**, **IN PART**, Defendant's Motion *in Limine* to Exclude Plaintiffs' Expert Samuel Wood (ECF No. 233).

The Court took the five remaining motions under advisement, and will **HOLD IN ABEYANCE** consideration of the following five motions, until such time as the Court is prepared

to rule: (5) Defendant's Motion for Summary Judgment (ECF No. 224); (6) Defendant's Motion *in Limine* to Exclude Evidence of Other Plaintiffs (ECF No. 227); (7) Defendant's Motion *in Limine* to Exclude Any Reference, Testimony, or Evidence of Prior Derailments and Rail Defects (ECF No. 229); (8) Defendant's Motion *in Limine* to Advise Jury as to the Settlement of Plaintiffs' Claims Against Sperry Rail, Inc. (ECF No. 230); and (9) Defendant's Motion *in Limine* to Exclude, or in the Alternative Limit, Evidence of CSXT's Financial Condition and Conditional Motion to Bifurcate Punitive Damages (ECF No. 231).

The Court will address each of the nine motions in turn. First, the Court will address those motions upon which it has made a ruling, and will expound upon the rationale provided during the hearing. Second, the Court will address the motions for which the Court has yet to take action. However, for those not yet adjudicated motions, the Court will delineate the directions for additional action and the expectations regarding the parties' steps to attempt to resolve these motions without the need for a judicial determination.

**1. Plaintiffs' Motion for Partial Summary Judgment (ECF No. 223)**

In their Motion for Partial Summary Judgment, Plaintiffs move the Court to reach four findings: (1) that Defendant has a non-delegable duty with regard to any violations of the Federal Railroad Administration's ("FRA") Track Safety Standards ("TSS") regulations because it is the track owner; (2) that Defendant is vicariously liable for the negligence of its subcontractor, Sperry Rail, Inc, for the damages arising from the February 16, 2015 train derailment in Mt. Carbon, West Virginia; (3) that Defendant is jointly and severally liable for those damages; and (4) that the vertical split head ("VSH") defect that caused the derailment is the type of defect that Defendant would be required to take certain action to address under the regulations. *Pls.' Mot. for Partial Summ. J.*, ECF No. 223, at 1-2.

Plaintiffs appear to request that the Court make legal rulings which depend upon certain findings of fact. The Court, however, refuses to take that action. The factual issues underlying Plaintiffs' request are disputed, and fit for the jury's consideration. Further, the Court will not make legal findings that are contingent upon a jury's findings of fact. Instead of meandering in the hypothetically necessary application of law at the summary judgment stage, the Court will take up the issues of law upon consideration of the jury instructions. Therefore, the Court denies plaintiffs' motion because the questions presented are premature at this time.

**2. Defendant's Motion *in Limine* to Exclude Evidence of the EPA Administrative Order on Consent (ECF No. 228)**

Defendant moved the Court, *in limine*, to exclude the use of, or reference to, an Administrative Order on Consent ("EPA Order") Defendant entered into with the Environmental Protection Agency. *Def.'s Mot. to Exclude EPA Order*, ECF No. 228, at 1. Defendant argued that the Court should exclude the EPA Order due to its irrelevance and substantial level of probable prejudice against Defendant. *See generally id.* Defendant noted that a majority of the EPA Order concerns escaped oil from the derailed train, and the legal ramifications of that spilled oil under the Clean Water Act. *See id.* at 2. Additionally, Defendant pointed to the express provisions of the EPA Order that state that nothing in the order shall be construed as an admission of fact. *Def.'s Reply*, ECF No. 261, at 2. Plaintiffs countered that the Court should allow the use of the EPA Order because it provides an accurate factual recitation of the events, and demonstrates the continuing impact of the derailment on Plaintiffs' community. *See generally Pls.' Resp. to Def.'s Mot. to Exclude EPA Order*, ECF No. 246.

The Court agrees with Defendant because the EPA Order would substantially prejudice Defendant in the eyes of the jury, and Plaintiffs can adduce facts regarding the ongoing impact of derailment through competent witnesses.

Defendant correctly asserts that a consent order with a governmental agency carries inordinate weight in the eyes of the jury, which will likely construe the EPA Order as an admission of wrongdoing. *See Def.'s Mot. to Exclude EPA Order*, at 3 (citing *Dahlgren v. First Nat. Bank of Holdrege,* 533 F.3d 681, 699 (8th Cir. 2008)). Additionally, Plaintiffs can achieve their purpose of showing the ongoing nature of the derailment's effects through the testimony of their scheduled witnesses. Comparing the significant threat of prejudice with the rather minimal probative value of the EPA order, the former substantially outweighs the latter. Therefore, the Court grants Defendant's motion.

However, the Court reserves the right to reconsider and revise this ruling if Defendant opens the door through which the EPA Order may enter. But, the Court will take that issue up at the appropriate time if it presents itself.

**3. Defendant's Motion *in Limine* to Exclude Plaintiffs' Expert Dr. April Watkins (ECF No. 232)**

Defendant challenges the reliability and helpfulness of the testimony of Dr. April Watkins, Plaintiffs' designated psychological expert. *See generally Def.'s Mot. to Exclude Dr. Watkins*, ECF No. 232. Dr. Watkins met with the six named plaintiffs that are scheduled to go to trial in March of this year ("Bellwether Plaintiffs"). Dr. Watkins rendered a report and respective diagnostic impressions for each of the Bellwether Plaintiffs. *See Ex A-D to Def.'s Reply*, ECF No. 257. Although she generally found that four of the Bellwether Plaintiffs exhibited variations of "Adjustment" or Anxiety Disorders, she did find that two of the Bellwether Plaintiffs did not

demonstrate any signs symptomatic of a diagnostic impression. *Def.'s Mot. to Exclude Dr. Watkins*, at 2-3.

Defendant claims that Dr. Watkins' diagnostic impressions fail the *Daubert* reliability requirement. *See id.* at 3-8. As one of its argumentative prongs, Defendant claims that Dr. Watkins' diagnostic impressions fail to reflect reliable methodology because she did not reach her conclusion via a differential diagnosis. *Id.* at 3-4 (*citing Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262-63 (4th Cir. 1999)). Performing a differential diagnosis requires a medical professional to review the totality of a patient's relevant medical history and profile, in order to eliminate all other potential causes for the diagnostic conclusion. While Defendant correctly finds that differential diagnosis is an acceptable method for deriving medical conclusions as to causation, the doctor's process was sufficient in this case.

Because Dr. Watkins' testimony involves issues of mental, as opposed to physical, diagnosis, certain inherent difficulties present themselves. *See Heller v. Doe by Doe*, 509 U.S. 312, 323-24 (1993) (recognizing the difficulties inherent with mental illness). With this in mind, the Court will allow Dr. Watkins to use her medical expertise to explain and identify the psychological symptoms testified to by the Bellwether Plaintiffs, as well as any causal link between these symptoms and the derailment events.

Additionally, contrary to Defendant's position, Dr. Watkins' testimony regarding the meaning of her diagnostic impressions, and the practical effects of those impressions upon the lives of the respective Bellwether Plaintiff, aides the trier of fact. As emphasized by the Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, an expert's testimony must assist the trier of fact in comprehending evidence or determining an issue of fact. 509 U.S. 579, 591 (1993) (citing Fed. R. Evid. 702). Bellwether Plaintiffs are expected to detail their fear, sadness, anxiety, and other

mental/emotional conditions both at the time of the derailment, and in the aftermath of it. As such, Dr. Watkins will utilize her medical expertise to provide a nomenclature for Bellwether Plaintiffs' symptoms, and provide a context for the quantum of seriousness involved with those conditions. This will help the jury to determine whether Bellwether Plaintiffs' mental/emotional symptoms were merely "spurious," or were capable of an impactful effect upon their lives. *See* Syl. pt. 11, *Marlin v. Bill Rich Constr., Inc.*, 482 S.E.2d 620, 623-24 (W. Va. 1996) ("A claim for emotional distress without an accompanying physical injury can only be successfully maintained upon a showing by the plaintiffs in such an action of facts sufficient to guarantee that the claim is not spurious and upon a showing that the emotional distress is undoubtedly real and serious.").

Furthermore, Defendant opposes Dr. Watkins' testimony upon the ground that it would be insufficient to establish the necessary standard for emotional distress damages under West Virginia law. *Def.'s Mot. to Exclude Dr. Watkins*, at 10-11. In making that argument, Defendant focuses upon cases in which a plaintiff made separate claims of either intentional or negligent infliction of emotional distress. *See id.* (citing *Courtney v. Courtney*, 437 S.E.2d 436, 443 (W. Va. 1993) and *Tanner v. Rite Aid of West Virginia, Inc.*, 461 S.E.2d 149, 159 (W. Va. 1995)) However, in this case, Plaintiffs have made no such claim. Instead, Plaintiffs have made claims of mental/emotional damages relating to the torts to property. *See Evans v. Mutual Mining*, 485 S.E.2d 695, 701 n. 3 (W. Va. 1997) ("Our opinion today does not foreclose a recovery for mental anguish in a case where only property is damaged."). Therefore, Defendant has misplaced its reliance upon cases dealing with intentional or negligent infliction of emotional distress. As such, the applicable elements and standards of those claims do not apply, and Defendant's argument fails.

Consistent with this analysis, the Court denies Defendant's motion, and will permit Dr. Watkins to testify, conditioned upon the confining of that testimony to the information covered in her report.

4.  **Defendant's Motion *in Limine* to Exclude Plaintiffs' Expert Samuel Wood (ECF No. 233)**

Defendant also challenges another of Plaintiffs' experts, Samuel Wood. Mr. Wood is Plaintiffs' expert on the damages to Bellwether Plaintiffs' houses and the cause of that damage. *Pls.' Resp.*, ECF No. 248, at 1. Bellwether Plaintiffs plan to offer the testimony of Mr. Wood to both describe the damage seen in their respective homes, as well as to offer a conclusion as the cause of that damage. Although the Court will allow Mr. Wood to testify regarding the damage he noticed during the inspections, it will not allow Mr. Wood to testify to the cause of any damages he observed. Mr. Wood is a well-qualified and well-respected Professional Engineer. However, he lacks the qualifications necessary to provide testimony regarding the effect of above ground explosions upon structures at varying distances from these explosions.

Mr. Wood lacks the specialized knowledge in explosives, and their effects upon structures, needed to offer an opinion linking the explosions resulting from the derailment with the damages found in Bellwether Plaintiffs' houses. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) (providing that an expert must have "sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case"). Plaintiffs point to Mr. Wood's thirteen-month stint as a company commander of the 44th Engineering Battalion in South Korea to support his qualifications to opine regarding damages caused by explosions. *Pls.' Resp.*, at 2. During this time, Mr. Wood placed and calibrated explosives at the base rock quarry. *Def.'s Mot. to Exclude Samuel Wood*, ECF No. 233, at 3. This experience did not lead Mr. Wood to familiarize himself with either

"blasting or the proximity of the blasting," or the effects of explosions upon structures. *Id.* (citing Mr. Wood's deposition).

In a state like West Virginia, where explosives experts abound due to the need for controlled basting during the mining of the State's coal, Plaintiffs' failure to procure a qualified explosives expert is troubling. Regardless, Plaintiffs' may not now attempt to pass Mr. Wood off for what he is not. Mr. Wood is an eminently qualified expert regarding the extent and quality of structural damage. Therefore, the Court will allow Mr. Wood to testify regarding his description of the damage he observed. However, the Court will not allow Mr. Wood to testify that the derailment explosions caused this damage. As such, the Court grants Defendant's motion, to the extent that it seeks to preclude Mr. Wood from opining that the explosions caused the damage to Bellwether Plaintiffs' houses.

5. **Defendant's Motion for Summary Judgment (ECF No. 224)**

The Court will continue take Defendant's Motion for Summary Judgment (ECF No. 224) under advisement. However, as noted at the hearing, the Court believes additional briefing on the claims of trespass and nuisance is necessary. Therefore, the Court **DIRECTS** Plaintiffs to file a Surreply on or before **Friday, March 2, 2018**, and Defendant to file a Surresponse on or before **Tuesday, March 6, 2018**. Pending this additional briefing, the Court **HOLDS IN ABEYANCE** consideration of this motion.

6. **Defendant's Motion *in Limine* to Exclude Evidence of Other Plaintiffs (ECF No. 227)**

From the discussion at the hearing, the Court understands that the parties are working toward resolving this motion by an agreed stipulation, without the need for a judicial ruling on the matter. The Court will allow the parties an opportunity to reach a mutually agreeable solution.

Therefore, the Court **HOLDS IN ABEYANCE** consideration of this motion. However, the Court **DIRECTS** the parties to provide the Court with a signal by the end of the business day on **Monday, March 5, 2018**, regarding the parties progress on this stipulation, and any need for judicial intervention to resolve the question.

7. **Defendant's Motion *in Limine* to Exclude Any Reference, Testimony, or Evidence of Prior Derailments and Rail Defects (ECF No. 229)**

During the hearing, the Court understood that Plaintiffs agreed to limit evidence regarding other rail defects to certain prior internal rail inspections. Defendant appeared to concur with Plaintiff's proposed limitation of certain internal rail inspections.

However, there continued to be a disagreement with regard to a 2011 discovery of a defect on a separate rail that was located at, or close to, the point of derailment. Pending the continuing discussions between the parties, the Court **HOLDS IN ABEYANCE** consideration of this motion, regarding the 2011 discovery of a defect on the separate rail and the subsequent replacement of that rail.

8. **Defendant's Motion *in Limine* to Advise Jury as to the Settlement of Plaintiffs' Claims Against Sperry Rail, Inc. (ECF No. 230)**

At the hearing, it appeared to the Court that there remains some fluidity in the respective positions of the parties on this motion. In order to accommodate the parties' progression on this issue, the Court will allow the parties to discuss this, in an effort to resolve it without the need for the Court's determination. Therefore, the Court **HOLDS IN ABEYANCE** consideration of this motion, pending the parties' mutual agreement regarding this question.

9. **Defendant's Motion *in Limine* to Exclude, or in the Alternative Limit, Evidence of CSXT's Financial Condition and Conditional Motion to Bifurcate Punitive Damages (ECF No. 231)**

In the course of considering Defendant's Motion for Summary Judgment, the Court is currently deliberating regarding Plaintiffs' punitive damages claim. If the need should arise, the Court will take up Defendant's Motion *in Limine* to Exclude, or in the Alternative Limit, Evidence of CSXT's Financial Condition and Conditional Motion to Bifurcate Punitive Damages (ECF No. 231). However, as the adjudication of Defendant's Motion for Summary Judgment may render unnecessary this motion *in limine*, the Court **HOLDS IN ABEYANCE** consideration of this motion.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: February 28, 2018

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE